**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: January 31, 2018.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PALMAZ SCIENTIFIC, INC., | § | CASE No. 16-50552-CAG |
| | § | |
| | § | **Chapter 11** |
| Debtor. | § | |

| | | |
|---|---|---|
| MILO H. SEGNER, JR., | § | |
| **Liquidating Trustee of the Palmaz** | § | |
| **Scientific Litigation Trust,** | § | |
| | § | |
| v. | § | Adversary No. 17-05027-CAG |
| | § | |
| ADMIRAL INSURANCE CO., *et al.* | § | |

| | | |
|---|---|---|
| JULIO PALMAZ, M.D., *et al.,* | § | |
| **Intervenor-Plaintiffs,** | § | |
| | § | |
| v. | § | Adversary No. 17-05027-CAG |
| | § | |
| ADMIRAL INSURANCE CO., *et al.* | § | |
| **Intervenor-Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER GRANTING INSURICA INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (ECF NO. 88)

On November 29, 2017, came on for hearing intervenor-defendant Insurica, Inc.'s ("Defendant")

1

Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 88) (the "Motion to Dismiss").

Intervenor-plaintiffs, Julio Palmaz, M.D., Steven Solomon, and John Asel ("Plaintiffs") filed a Response

on October 20, 2017 (ECF No. 119). Defendant filed a Reply on November 10, 2017 (ECF No. 132). The

parties each appeared through counsel and presented argument. After considering the arguments made and

the pleading of counsel, and the file and record in the case, the Court finds that the Motion should be

granted.

## JURISDICTION

This Court has jurisdiction over this Motion to Dismiss pursuant to 28 U.S.C. § 1334(b) and the

United States District Court for the Western District of Texas' Standing Order of Reference of Bankruptcy

Cases and Proceedings dated October 4, 2013. Moreover, this Order complies with the Court's obligation

under 28 U.S.C. § 157(b)(3). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409. The

statutory predicate for relief is Fed. R. Civ. P. 12(b)(1), made applicable to this proceeding through Fed. R.

Bankr. P. 7012 and Local Rule 7012.

## BACKGROUND

Palmaz Scientific Inc. ("PSI") was a medical technology company dedicated to developing

implantable medical devices. In 2015, PSI worked with Defendant, an insurance broker, to renew its

director and officer liability insurance policies ("D&O policies").

PSI filed for bankruptcy under chapter 11 of the Bankruptcy Code in 2016 (Case No. 16-50552).

Pursuant to Debtors' plan of reorganization (the "Plan"), which was confirmed by the Court on July 15,

2016 (ECF No. 356), and became effective on August 12, 2016 (ECF No. 385), the Palmaz Scientific

Litigation Trust ("PSLT") was created and a Litigation Trustee was appointed to pursue possible causes of

action for breaches of fiduciary duty against former officers and directors of PSI (the "D&O Claims"). The

Litigation Trustee brought suit in state court on March 3, 2016, against several former officers and directors

on behalf of PSLT. Three of those former officers and directors are the Plaintiffs in this action. Upon filing

in state court, the insurance carriers asserted that no coverage existed for the Litigation Trustee's claims

2

because of an exclusion in the D&O Policies barring claims brought by one insured against another insured ("insured versus insured clause").

The Litigation Trustee returned to this Court and instituted an adversary proceeding to determine whether the insured versus insured clause applies. Plaintiffs filed an Amended Complaint in Intervention (ECF No. 120) and seek reformation of the D&O Policies[1] or, in the alternative, damages from Defendant for negligent misrepresentation and fraud in the brokering of the D&O Policies. Plaintiffs' claim that they instructed Defendant to renew the D&O Policies with the same substantive coverage as their previous policies and PSI purchased the 2015 D&O policies based on Defendant's representation that the coverage was the same. The dispute between Plaintiffs and Defendant pertains to the "Bankruptcy Exception" that was included in the 2014 D&O polices but were excluded from the 2015 D&O policies. The Bankruptcy Exception exempts "any claim, in any bankruptcy proceeding by or against the Insured Entity" from the insured versus insured clause.

Defendant filed a Motion to Dismiss (ECF No. 88) under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.[2] Defendant asserts that Plaintiffs' Complaint does not assert claims that would be classified as "core" proceedings (proceedings "arising under title 11" or "proceedings arising in . . . cases under title 11") nor are Plaintiffs' claims "non-core" proceedings ("related to" the bankruptcy) under 28 U.S.C. § 1334(b). Moreover, Defendants argue that this Court's jurisdiction over this matter is limited because the matter was filed post-confirmation.

Plaintiffs' Response (ECF No. 119) counters that this Court has subject matter jurisdiction because: (1) the Court retained jurisdiction for disputes concerning the D&O Policies in the Plan and Confirmation Order; (2) Plaintiffs' claims are "related to" PSI's bankruptcy; and (3) Plaintiffs' claims "arise in" PSI's bankruptcy. In Defendant's Reply to Plaintiffs' Response (ECF No. 132), Defendant addressed each of the

---

[1] Plaintiffs' action seeking reformation of the D&O Policies is an action against the insurance carriers and not Insurica.

[2] Defendant's Motion to Dismiss was originally filed against Plaintiff's original Complaint in Intervention (ECF No. 74). The Court is applying Defendant's Motion to Dismiss to the claims set forth against Defendant in Plaintiff's Amended Complaint in Intervention (ECF NO. 120).

three counterarguments raised by the Plaintiffs. First, Defendants argue that the Court's retention of jurisdiction to resolve disputes arising in connection with the interpretation, implementation, or enforcement of the Plan cannot independently confer jurisdiction. Second, Plaintiffs' claims are not related to PSI's bankruptcy because the claims have no effect on the estate.  Lastly, Defendants' argue that Plaintiffs' basis for arising in jurisdiction is based on a "but for" test which has been rejected by the First Circuit in *Gupta v. Quincy Medical Center*, 858 F.3d 657, 664 (1st. Cir. 2017) and is therefore not a valid test for determining whether the Court has arising in jurisdiction over the matter.

The Court finds the dispositive issue in this case to turn on whether the Court has post-confirmation related to subject matter jurisdiction. The parties' arguments are based on principles of pre-confirmation jurisdiction which assume that an estate exists.   Because the Debtors' plan of reorganization has been confirmed, there is no estate; the disposition of this case, therefore, will depend on the Court's post-confirmation subject matter jurisdiction. For reasons explained below, the Court finds that it does not have subject matter jurisdiction because the Plaintiff's claims are post-confirmation disputes extending beyond interpreting, implementing, or enforcing the Plan.

## DISCUSSION

"[T]he source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157 . . . ." ***In re U.S. Brass Corp.***, 301 F.3d 296, 303 (5th Cir. 2002). Section 1334(a) provides a broad grant of jurisdiction for cases under title 11 to district courts, being "the bankruptcy petition itself, over which district courts (and their bankruptcy units) have original and exclusive jurisdiction." ***In re Wood***, 825 F.2d 90, 92 (5th Cir. 1987) (internal quotation marks omitted). Section 1334(b) sets jurisdiction for the various sorts of issues that arise during the prosecution of a bankruptcy case. It provides, in pertinent part, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (2012).

The term "arising under title 11" refers to those causes of action that are created by the Bankruptcy Code, in that the proceeding is based on a section of title 11; the term "arising in" refers to a residual category of civil proceedings occurring in bankruptcy cases, such as administrative matters; and the term "related to" refers to those causes of action that somehow affect the bankruptcy estate. 1 **COLLIER ON BANKR.** ¶¶ 3.01[4][c][iii]–[vi], at 3-18 to 3-28 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017). Matters "arising under" title 11 are claims based on a provision of title 11, such as actions to recover fraudulent conveyances and prepetition transfers. *Carlton v. Baww, Inc.*, 751 F.2d 781, 787 (5th Cir. 1985). Matters "arising in" bankruptcy "refer to those 'administrative' matters that arise only in bankruptcy cases. In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy." *Wood*, 825 F.2d at 97. Matters "arising under" title 11 or "arising in" cases under title 11 are "core" proceedings, while matters "related to cases under title 11" are "non-core" matters. *Stern v. Marshall*, 564 U.S. 462, 476 (2011).

### A. The Court's Retention of Jurisdiction Cannot Decide The Issue

Plaintiffs argue that this Court has jurisdiction because the Court retained it under the express language of the Plan and Confirmation Order. A court can only retain jurisdiction if it had it in the first place. *In re Bass*, 171 F.3d 1016, 1025 (5th Cir. 1999). Because the bankruptcy court's jurisdiction is controlled by statute, a court's stated retention of jurisdiction cannot independently decide the issue; the Court must look to 28 U.S.C. § 1334 to determine if subject matter jurisdiction exists. *See U.S. Brass Corp.*, 301 F.3d at 303. When post-confirmation jurisdiction is at issue, however, the court must ensure jurisdiction is appropriate under the Fifth Circuit's holding in *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388 (5th Cir. 2001) discussed in Part D below.

### B. The Court Does Not Have "Related To" Jurisdiction

A matter is "related to" the bankruptcy when "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (adopted by the Fifth Circuit in *Wood*, 825 F.2d at 92) (emphasis in original). "Conversely,

'bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor.'" *In re Galaz*, 765 F.3d 426, 430 (5th Cir. 2014) (*quoting In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995)). In *Celotex Corp. v. Edwards*, the United States Supreme Court found that "[p]roceedings 'related to' the bankruptcy include: (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." 514 U.S. 300, 307 n.5 (1995) (*citing* 1 COLLIER ON BANKR. ¶ 3.01[1][c][iv], at 3-28). In the Fifth Circuit, a court has related to jurisdiction if (1) the outcome of the action "could alter the debtor's rights, liabilities, options, or freedom of action" and (2) the outcome impacts "the handling and administration of the estate." *Walker*, 51 F.3d at **569.**

Defendant cites to the Fifth Circuit's case, *In re Walker*, as an example of where a bankruptcy court lacks subject matter jurisdiction over state law, third party claims in similar procedural posture as this case. In *In re Walker*, the Fifth Circuit determined that the bankruptcy court lacked jurisdiction to determine a mortgagee's claim for contribution from a third-party for damages the mortgagee was ordered to pay the chapter 7 debtor. 51 F.3d at 569. The bankruptcy court found that the mortgagee had violated the automatic stay and further found that the purchaser was also fifty percent liable for the amount owed to the debtor. *Id.* at 565. The district court reversed the bankruptcy court and found that the bankruptcy court lacked subject matter jurisdiction over the third-party claim. *Id.* In affirming the district court, the Fifth Circuit concluded that whether a third party was ordered to reimburse the mortgagee could have "no 'conceivable effect on the administration of the estate' nor would the outcome of that claim 'alter the debtor's rights, liabilities, options, or freedom of action.'" *Id.* at 569. The court went on to say "[i]t is difficult to imagine that whether [the third party] should be required to reimburse [the mortgagee] for any money [the mortgagee] pays to [the debtor] could somehow affect the estate." *Id.* The court cited *In re Pettibone Corp.* in support, which held that a "cross-claim which would 'merely determine which party will ultimately be responsible in the event that [the first-party defendant] is found liable in the underlying

6

[a]dversary actions,' was not 'related to' bankruptcy under § 1334." *Id.* (*citing* 135 B.R. 847 (Bankr. N.D. Ill. 1992)).

While the Court agrees with Defendant's recitation of *In re Walker*, the Court does not agree that *In re Walker* provides the Court with a basis to dismiss the case for lack of subject matter jurisdiction. The court's analysis in *In re Walker* revolves around whether the third-party's claim will have an effect on the administration of the debtor's chapter 7 estate. In a chapter 11 case, as is the case here, when a plan of reorganization is confirmed, the debtor's estate ceases to exist. *In re Craig's Stores*, 266 F.3d at 390. Here, Debtors' plan has been confirmed thereby rendering its estate non-existent. Accordingly, whether or not Defendant's claim has an effect on the Debtors' estate is not the proper analysis as there is no estate to affect.[3]

### C.  The Court Does Not Have "Arising In" Jurisdiction

In *Stern*, the United States Supreme Court concluded that "arising in" jurisdiction falls within the core proceeding category. 564 U.S. at 476. The Fifth Circuit, as early as *Wood*, also recognized that "arising in" must be a core proceeding because 11 U.S.C. § 157(b)(1) "vests full judicial power in bankruptcy courts over 'core proceedings arising under title 11, or arising in a case under title 11.'" 825 F.2d at 96 (*quoting* § 157(b)(1)). The *Wood* Court further stated that the meaning of "arising in" proceedings "seems to be a reference to those 'administrative' matters that arise only in bankruptcy cases. In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* at 97. Because this brief discussion in *Wood* is the extent of the Fifth Circuit's analysis of "arising in" jurisdiction, the Court has looked to other circuits for guidance and finds the First Circuit's analysis in *Gupta v. Quincy Medical Center*, 858 F.3d 657 (1st Cir. 2017), persuasive because it comports with the Fifth Circuit's holding in *Wood*.

---

[3] Defendants cite to a number of other cases where a court found related to jurisdiction was lacking because the case involved third party claims that had no effect on the debtor's estate. Defendant's reliance on these cases is misplaced for the same reasons—Debtors' plan has been confirmed and the bankruptcy estate no longer exists.

The First Circuit adopted an identical definition of "arising in" jurisdiction as that found in *Wood*. *Compare* **Wood**, 825 F.2d at 97 ("'[A]rising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."), *with* **Gupta**, 858 F.3d at 662–63 ("We have defined 'arising in' proceedings generally as 'those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.'"). Claims that "arise in" bankruptcy do so "by their nature, not their particular factual circumstances . . . ." **Gupta**, 858 F.3d at 663. Examples of this include "administrative matters, orders to turn over property of the estate, and determinations of the validity, extent, or priority of liens." **Id.** "Administrative matters" include "allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans," and "orders permitting the assumption or rejection of contracts." **Id.** These examples are clearly distinguishable from state law claims that can arise during the course of a bankruptcy based on the "particular factual circumstances."

In **Gupta**, as in this case, the party asserting the state law claims argued that the claims "arose in" the bankruptcy "because, 'but for' Debtors' Chapter 11 case and the Sale Order approving the sale of Debtors' assets . . . their claims . . . would not exist." **Id.** at 664.

> This argument misapprehends the relevant law. As we have explained, it is not enough for "arising in" jurisdiction that a claim arose in the context of a bankruptcy case. Instead, our case law makes clear that for "arising in" jurisdiction to apply, the relevant proceeding must have "no existence outside of the bankruptcy." *In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 68 (1st Cir. 2002) (*quoting In re Wood*, 825 F.2d at 97). Hence, there is no "but for" test for "arising in" jurisdiction as Appellants suggest. That is, "the fact that a matter would not have arisen had there not been a bankruptcy case does not ipso facto mean that the proceeding qualifies as an 'arising in' proceeding." COLLIER ¶ 3.01[3][e][iv]. Instead, the fundamental question is whether the proceeding by its nature, not its particular factual circumstance, could arise *only* in the context of a bankruptcy case. *In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d at 68. In other words, it is not enough that Appellants' claims arose in the context of a bankruptcy case or even that those claims exist only because Debtors (Appellants' former employer) declared bankruptcy; rather, "arising in" jurisdiction exists only if Appellants' claims are the type of claims that can only exist in a bankruptcy case.

**Id.** at 664–65. The First Circuit's reasoning in reaching the determination that there is no "but for" test conforms with and expands on the analysis of the Fifth Circuit in *Wood* and, therefore, this

Court agrees (and the Court believes the Fifth Circuit would also agree) that there can be no "but for" test when considering "arising in" jurisdiction.

In the present case, in support of the "but for" test, Plaintiffs point to four cases, none of which are binding on this Court. Two were decided outside of the Fifth Circuit and only one was decided post-*Stern*. *See Del. Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500 (S.D.N.Y. 2015); *In re Kaiser Grp. Intern., Inc.*, 421 B.R. 1 (Bankr. D.C. 2009); *In re Murphy*, 213 B.R. 813 (Bankr. S.D. Miss. 1997); *In re Simmons*, 205 B.R. 834 (Bankr. W.D. Tex. 1997). The three pre-*Stern* cases do not address the fact that "arising in" jurisdiction must concern a core proceeding. *See generally Kaiser*; 421 B.R. 1; *Murphy*, 213 B.R. 813; *Simmons*, 205 B.R. 834. Also, both of the cases cited from within the Fifth Circuit ignore this Circuit's holding in *Wood* that a "related to" analysis is all that must be done to determine jurisdiction and found that, although there was no "related to" jurisdiction, there was still "arising in" jurisdiction. *Murphy*, 213 B.R. at 816–17; *Simmons*, 205 B.R. at 844.

These cases can be distinguished factually as well. *Delaware Trust* involved two creditors fighting over how the debtor-in-possession's cash collateral payments should be disbursed. 534 B.R. at 513–14. Although the court applied a "but for" analysis to reach its conclusion, the holding would still be the same under the *Gupta* analysis; a dispute about the allocation of cash collateral payments is one that can only arise in a bankruptcy and therefore a finding that "arising in" jurisdiction existed was proper. *Id.* at 513; *Gupta*, 858 F.3d at 665. The other three cases cited by Plaintiffs involve malpractice claims asserted by a debtor or creditor against its former bankruptcy counsel. *See Kaiser*; 421 B.R. at 5 (Debtor asserted malpractice claim against its former bankruptcy counsel); *Murphy*, 213 B.R. at 814 (Creditor asserted malpractice claim against its former bankruptcy counsel); *Simmons*, 205 B.R. at 836 (Debtor asserted malpractice claim against its former bankruptcy counsel). Each of these courts focused on the "factual circumstances" of the case rather than the "nature of the proceedings" and concluded that because the malpractice claims

centered around legal services provided during the bankruptcy, the malpractice claims would not exist "but for" the bankruptcy so "arising in" jurisdiction existed. *See Kaiser*; 421 B.R. at 14; *Murphy*, 213 B.R. at 817; *Simmons*, 205 B.R. at 850. Had these courts focused on the "nature of the proceedings," they would have come to the opposite conclusion as a malpractice claim can obviously exist outside of bankruptcy.

This Court does not have "arising in" jurisdiction because Plaintiffs' state law claims for negligent misrepresentation, and fraud are not of the kind that can only exist in a bankruptcy case. It is not enough that the facts giving rise to the claims are in the context of a bankruptcy because "the fundamental question is whether the proceeding by its nature, not its particular factual circumstances, could arise *only* in the context of a bankruptcy case. *Gupta*, 848 F.3d at 665.

### D.  The Court Does Not Have Post-Confirmation Related to Jurisdiction

Finally, this Court's jurisdiction becomes much more limited upon confirmation of a plan of reorganization. The previous discussion concerns a bankruptcy court's jurisdiction generally, but because a plan of reorganization has already been confirmed, the Court must specifically consider its post-confirmation jurisdiction. The Fifth Circuit, in *In re Craig's Stores of Texas, Inc.*, determined that, post-confirmation, a bankruptcy court's "expansive" jurisdiction is no longer "required to facilitate 'administration' of the debtor's estate, for there is no estate left to organize." 266 F.3d 388, 390 (5th Cir. 2001). Under this "more exacting theory of post-confirmation bankruptcy jurisdiction," "bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Id.* at 390–91.

In *Craig's Stores*, the debtor sued a bank (its largest creditor) in bankruptcy court eighteen months after its plan had been confirmed, asserting state law contract claims. *Id.* at 390. Craig's Stores claimed that jurisdiction was proper because the "contract existed before confirmation," "the contract was assumed in the plan of reorganization," and "resolution of the claim could affect Craig's ability to make payments under the plan . . . ." *Id.* In rejecting these arguments, the court

considered three factors: (1) the "claims against the Bank principally dealt with post-confirmation relations between the parties"; (2) "[t]here was no antagonism or claim pending between the parties as of the date of reorganization"; and (3) "no facts or law deriving from the reorganization or the plan was necessary to the claim asserted by Craig's against the Bank." *Id.* at 391. The court went as far as to say that even if resolution of the claim could have some effect on Craig's ability to make payments under the plan, that still did "not bear on the implementation or execution of the debtor's plan . . . ." *Id.* In other words, while "some conceivable effect" on the estate may establish jurisdiction pre-confirmation, "some conceivable effect" on the debtor's ability to make plan payments post-confirmation is not enough under *Craig's Stores*. "In sum, the state law causes of action asserted by Craig's against the Bank did not bear on the interpretation or execution of the debtor's plan and therefore did not fall within the bankruptcy court's post-confirmation jurisdiction." *Id.*

In *In re Enron Corp. Securities*, the Fifth Circuit addressed its holding in *Craig's Stores* and made explicit the factors it considered critical for its holding in *Craig's Stores*: (1) whether the claims at issue dealt with pre- or post-confirmation relations between the parties; (2) whether there was "antagonism or [a] claim pending between the parties as of the date of reorganization"; and (3) whether there were "facts or law deriving from the reorganization or the plan [that were] necessary to the claim." 535 F.3d 325, 335 (5th Cir. 2008). Based on these factors, the *Enron* court found that jurisdiction existed in that case because the claims "concern[ed] pre-confirmation relations between the parties, and . . . the claims were raised pre-confirmation." *Id.* The court did not consider the third factor because no party presented arguments concerning it and because the court found the first two factors "weigh[ed] heavily in favor of federal jurisdiction." *Id.* at 336.

Applying the *Craig's Stores* factors to this case confirms that the Court does not have jurisdiction. *Craig's Stores* and *Enron* operated at two ends of the "post-confirmation jurisdictional spectrum": *Craig Stores* dealt with post-confirmation activities and a post-confirmation dispute and

*Enron* dealt with pre-confirmation activities and a pre-confirmation dispute. The case at hand deals with pre-confirmation activities and a post-confirmation dispute. Nonetheless, the Court finds that the second and third factors still weigh in favor of finding no jurisdiction. First, Plaintiffs raised the dispute post-confirmation rendering this a post-confirmation dispute. Second, the dispute does not involve interpretation, implementation, or enforcement of the Plan and therefore no facts or law deriving from the reorganization or the plan is necessary to these claims.

## CONCLUSION

Because this dispute is a post-confirmation dispute that does not involve interpretation, implementation, or enforcement of the Plan, this Court does not have post-confirmation related to jurisdiction over these claims.

IT IS THEREFORE ordered that Insuica's Motion to Dismiss for Lack of Subject Matter Jurisdiction is GRANTED.

IT IS FURTHER ORDERED that all other relief requested is DENIED.

# # #