**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: June 04, 2018.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PALMAZ SCIENTIFIC, INC.,** | § | **CASE No. 16-50552-CAG** |
| | § | |
| | § | **Chapter 11** |
| Debtor. | § | |

| | | |
|---|---|---|
| **MILO H. SEGNER, JR.,** | § | |
| **Liquidating Trustee of the Palmaz** | § | |
| **Scientific Litigation Trust,** | § | |
| | § | |
| **v.** | § | **Adversary No. 17-05027-CAG** |
| | § | |
| **ADMIRAL INSURANCE CO.,** *et al.* | § | |

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT ADMIRAL'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT (ECF NO. 3)

On November 29, 2017, came on for hearing Defendant Admiral's Motion to Dismiss and

1

Memorandum of Law in Support (ECF No. 3) (the "Motion to Dismiss").[1] Defendants Colony Insurance Company ("Colony"), Allied World Assurance Company (U.S.) Inc. ("Allied World"), Hiscox Insurance Company, Inc. ("Hiscox"), and Federal Insurance Company ("Federal") (collectively, the "Excess Insurers") each filed joinders in the Motion to Dismiss (ECF Nos. 6, 14, 16, and 70). The Litigation Trustee filed the Trustee's Consolidated Response to the Motions to Dismiss (ECF No. 50). Defendant Admiral filed its Reply Memorandum of Law in Support of its Motion to Dismiss (ECF No. 51). Defendant Allied World filed its Reply in Further Support of And Joinder in Admiral's Reply Memorandum (ECF No. 52). Defendants Colony and Federal filed joinders to Admiral's Reply (ECF Nos. 53, 70). Defendants Colony, Allied World, Federal, and Hiscox also filed a Reply Memorandum In Further Support of Motion to Dismiss Trustee's Complaint. (ECF No. 115). The parties each appeared through counsel and presented argument. After considering the arguments made and the pleading of counsel, and the file and record in the case, the Court finds that the Motion to Dismiss should be denied.

## JURISDICTION

The Court has examined its subject matter jurisdiction. For the reasons stated in this Court's Memorandum Opinion and Order Granting Insurica's Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 168), the Court has determined that it has the requisite authority to enter a final order and judgment pursuant *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388 (5th Cir. 2001). *Palmaz et al. v Admiral Ins. Co. et al. (In re Palmaz Scientific, Inc.)*, Case No. 16-50552-CAG, Adv. No. 17-05027, 2018 WL 661409, at * 6–7 (Bankr. W.D. Tex. Jan. 31, 2018). The Court finds that the first and third *Craig's Stores* factors are satisfied. First, the instant dispute

---

[1] Defendant's Motion to Dismiss was originally filed against Plaintiff's original Complaint in Intervention (ECF No. 74). The Court is applying Defendant's Motion to Dismiss to the claims set forth against Defendant in Plaintiff's Amended Complaint in Intervention (ECF NO. 120).

deals with pre-confirmation activities between the parties as the director and officer liability policies were executed prior to the bankruptcy being filed. Second, while the dispute arose post-confirmation, the Court has already held that the Debtors' plan of reorganization expressly reserved the Litigation Trustee's exclusive authority to pursue the director and officer liability policies. *See* ECF Nos. 356 and 596. Moreover, to resolve the instant dispute, the Court is required to assess the terms of a litigation trust agreement incorporated into the Debtors' plan of reorganization. As such, the instant dispute involves the interpretation of Debtors' plan of reorganization thereby satisfying the third ***Craig's Stores*** factor. Because two of the three factors weigh in favor of subject matter jurisdiction, the Court finds that it has the requisite subject matter jurisdiction. ***See In re Craig's Stores of Texas, Inc.***, 266 F.3d at 336 (finding subject matter jurisdiction existed where two of the three ***Craig's Stores*** "weigh[ed] heavily in favor of federal jurisdiction"). Venue in this district is proper under 28 U.S.C. § 1409. The statutory predicate for relief is Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding through Fed. R. Bankr. P. 7012 and Local Rule 7012.

## BACKGROUND

Palmaz Scientific Inc. ("PSI") was a medical technology company dedicated to developing implantable medical devices. In 2015, PSI purchased approximately $20 million of director and officer liability insurance ("D&O policies") which was layered through a primary insurer ("Admiral") with several excess insurance layers through the Excess Insurers (collectively, the "Defendants"). The Excess Insurers are excess insurance carriers with policies that "follow form" from the Admiral primary policy. PSI is the named "Insured" under the purchased policies.

In 2016, PSI filed bankruptcy under chapter 11 of the Bankruptcy Code (Case No. 16-50552). Pursuant to Debtors' plan of reorganization (the "Plan"), which was confirmed by the Court on July 15, 2016 (ECF No. 356), and became effective on August 12, 2016 (ECF No. 385),

the Palmaz Scientific Litigation Trust (the "Litigation Trust") was created and the Litigation Trustee was appointed to pursue causes of action for breaches of fiduciary duty against former officers and directors of PSI ("D&O Claims").

On July 27, 2016, the Litigation Trustee sent a notice of claim letter to several former director and officers of PSI outlining potential claims and causes of action he believed may be brought against them for, among other things, breaches of fiduciary duty. The Litigation Trustee also sent his notice of claim letter to the Defendants. On October 27, 2016, Admiral sent counsel for the former officers and directors a reservation of rights letter, which claimed that no coverage would exist under the D&O policies. Specifically, Admiral denied coverage based on an "insured-versus-insured exclusion" contained in the Admiral Policy (the "Exclusion"). On March 3, 2017, the Litigation Trustee filed suit against several former director and officers, Julio Palmaz, M.D. ("Dr. Palmaz"), Steve Solomon ("Solomon"), Phillip Romano ("Romano"), Eugene Sprague ("Sprague"), and John Asel ("Asel") for, among other things, breaches of fiduciary duty that resulted in damages in excess of $30 million (the "Litigation Trustee's Lawsuit"). In the Litigation Trustee's Lawsuit, the Litigation Trustee asserts two types of claims: (1) derivative claims assigned to him under the Litigation Trust Agreement (the "D&O Claims"[2]) and (2) direct claims assigned to him by former PSI shareholders for misrepresentations and omissions made to the

---

[2] Under the Plan, D&O Claims are defined as

> any and all claims and causes of action arising from any act or omission, including, but not limited to misconduct, misfeasance, malfeasance, breach of fiduciary duty, breach of duty of loyalty, breach of duty of care, breach of duty of obedience, negligence, gross negligence, fraud or any other intentional tort, and any civil conspiracy or civil RICO claims for such misconduct against any current or former officer or director resulting in damage to the Debtors.

(ECF No. 356, Plan § 1.1).

shareholders when soliciting private investments for PSI.  It is undisputed that each of these individuals are Insured under the Admiral Policy.

As a result of Admiral's denial of coverage, the Litigation Trustee filed a Complaint for Declaratory Judgment (ECF No. 1), and subsequently an Amended Complaint for Declaratory Judgment (ECF No. 142) asking this Court to determine whether the Exclusion applies to the Litigation Trustee.  Specifically, the Court must determine whether the Litigation Trustee is an "Insured" under the terms of the Admiral Policy. Defendant Admiral filed this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), incorporated by Bankruptcy Rule of Procedure 7012,  arguing that the Litigation Trustee has failed to state a claim which is not cognizable as a matter of law. (ECF No. 3).

### a. The Admiral Policy[3]

The Admiral Policy agrees to "pay on behalf of the **Insured Persons** all Loss arising from any Claim . . . for any actual or alleged Wrongful Act . . . ." Section IV.F., however, contains an insured-versus-insured exclusion that provides, in relevant part:

> [T]he Insurer shall not be liable to make any payment for **Loss** in connection with a claim made against any **Insured**:
>> F. by, on behalf of, or in the right of any **Insured** in any capacity, or any security holder of the **Insured Entity**, provided, however, this exclusion does not apply to:
>>> 1. any Claim by any security holder of the **Insured Entity**, whether directly or derivatively, but only if such claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or participation of, or intervention of any **Insured**.

The relevant capitalized terms are defined as follows:[4]

---

[3] The Admiral Policy was referenced in the Trustee's Complaint and therefore can be considered for purposes of ruling on the Motion to Dismiss. *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.,* 336 F.3d 375, 379 (5th Cir.2003).

[4] The relevant definitions are contained in both the Common Policy Terms and Conditions Section and Directors, Officers and Corporate Liability Insurance Coverage Section of the Admiral Policy.

**"Debtor in Possession"** means a debtor in possession as such term is used in Chapter 11 of the United States of America Bankruptcy Code.[5]

**"Insured"** means any **Insured Person** or any **Insured Entity.**

**"Insured Person"** means:

    1. any past, present or future duly elected or appointed director or officer of an Insured Entity, or

    2. any past, present or future duty elected or appointed member of the board of managers, member of the management committee, or equivalent executive of an **Insured Entity** if organized as a limited Liability Company.

**"Insured Entity"** means the **Named Insured** and any **Subsidiary**, and in the event any bankruptcy proceeding shall be instituted by or against the **Insured Entity,** the **Debtor in Possession** (or equivalent status outside the United States), if any.

The Admiral Policy also speaks to the Parties' obligations in the event of bankruptcy or insolvency:

Bankruptcy or insolvency of the Insureds or of their estates shall not relieve the **Insurer** of any of its obligations hereunder. . . .

Thus, under the Admiral Policy, Defendants are not required to provide coverage for any loss related to a claim made *against* PSI's directors and officers or PSI (or in the event of bankruptcy, PSI as debtor in possession) "*by, on behalf of, or in the right of*" PSI's directors and officers or PSI (or in the event of bankruptcy, PSI as debtor in possession) (emphasis added). Moreover, in the event of bankruptcy, Defendants are still obligated to provide coverage consistent with the terms of the Admiral Policy.

## DISCUSSION

### A. Legal Standard

Before the Court is a motion to dismiss the Litigation Trustee's Complaint for Declaratory Judgment for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Declaratory Judgment Act authorizes federal courts, "[i]n a case of actual controversy within its

---

[5] Under the Bankruptcy Code, "debtor in possession" means "debtor except when a person has qualified under section 322 of the title is serving as Trustee in the case[.]" 11 U.S.C.A. § 1101(1) (2018).

jurisdiction, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A § 2201(a) (2018). "The phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Garcia v. Glob. Dev. Strategies Inc.*, 44 F. Supp. 3d 666, 670 (W.D. Tex. 2014) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). A court may not enter an advisory opinion on a hypothetical set of facts, and therefore, for purposes of the Declaratory Judgment Act, Article III requires that a dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* (quoting *MedImmune*, 549 U.S. at 127–30). "[A] declaratory judgment claimant[, however,] need not actually expose himself to liability before bringing suit." *Id.* "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127; *see also Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir.2009).

Here, the Parties do not dispute that a justiciable controversy exists. Instead, the Parties are using a Federal Rule of Civil Procedure 12(b)(6) motion to argue the merits of the ultimate dispute contained in the Litigation Trustee's Complaint for Declaratory Judgment. Given the circumstances and Parties' requests, the Court will evaluate the merits of the Motion to Dismiss using the traditional 12(b)(6) standard.

In the Fifth Circuit, when considering a motion to dismiss for failure to state a claim, the court must "accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 502–03 (5th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "To survive dismissal, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678; see also *Twombly*, 550 U.S. at 570 (holding complaint must allege enough facts to move the claim "across the line from conceivable to plausible").  The determination of whether the plausibility standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679; *see also Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) ("Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.").  Motions to dismiss under Fed. R. Civ. P. 12(b)(6) are "viewed with disfavor and [are] rarely granted."  *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (citing *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)).

"On a motion to dismiss, the court may properly consider the documents attached to or incorporated by reference in the plaintiff's complaint, facts of which judicial notice may be taken, and matters of public record." *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.,* 336 F.3d 375, 379 (5th Cir.2003) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir.1996)).  "A court may take judicial notice of related proceedings and records in cases before the same court." *MacMillan Bloedel Ltd. V. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985).

**B.  Legal Analysis**

### a.  D&O Claims (Derivative Claims)

First, applying the plain language of the Exclusion, Defendants argue that the Litigation Trustee's Lawsuit is barred by the Exclusion because the Trustee's lawsuit is "on behalf of," or "in the right of" any Insured. Defendants maintain that the Litigation Trust Agreement assigned the D&O Claims to the Litigation Trustee, and as an assignee, the Litigation Trustee stands in the

same position as PSI with respect to the D&O Claims. Moreover, because the Litigation Trustee is asserting derivative claims, and derivative claims belong to the corporation, the Litigation Trustee, as a direct assignee of PSI, is asserting PSI's claims against the directors and officers. Consequently, given that the D&O Claims were assigned by PSI to the Litigation Trustee, the Litigation Trustee's D&O Claims are brought "on behalf of or in the right of" the Insured (PSI) and are barred by the Exclusion. Defendants cite to two cases which hold that claims assigned by an "insured" are barred by an "insured-versus-insured exclusion ": ***Niemuller v. Nat'l Union Fire Ins. Co.***, No. 92 Civ. 0070 (SS), 1993 WL 546678, (S.D.N.Y Dec. 30, 1993); ***Great Am. Ins. Co. v. Primo***, 512 S.W.3d 890 (Tex. 2017).

***Niemuller v. Nat'l Union Fire Ins. Co.*** involved a lawsuit whereby Qantel Corporation ("Qantel") filed suit for breach of employment agreement and fiduciary duties against Niemuller, a former director and officer of Quantel. 1993 WL 546678 at *1. Qantel had purchased a directors and officers insurance policy containing an exclusion clause insulating the insurer from liability for claims made against a director or officer "which are brought by any Insured or the Company . . . ." ***Id.*** Subsequently, Qantel entered into an Asset Purchase Agreement with Decision Data Credit Corporation (DDCC) and Sussex Investment, Ltd. (Sussex) whereby DDCC and Sussex would each receive 50% interest in all rights and claims against Niemuller. ***Id.*** Stated differently, Quantel assigned its claims against Niemuller to DDCC and Sussex. ***Id.*** Niemuller reported his claim for advancement of defense costs to the insurance company. ***Id.*** The insurance company refused to provide coverage for Niemuller's defense costs and maintained that the insurance policy's exclusion clause specifically exclude claims against Qantel's own directors and officers. ***Id.***

Niemuller contended that the exclusion clause did not apply to his request for defense costs because Qantel assigned its claims to DDCC and Sussex. ***Id.*** Niemuller supported his argument by citing to cases involving regulatory banking agencies, such as the Federal Deposit Insurance

Corporation (FDIC), where courts recognized such "regulatory assignees" should not be treated as an ordinary assignee and are therefore not barred by the insured-versus-insured exclusion. *Id.* The court found these regulatory assignee cases distinguishable:

> The extant case before me, in contrast, involves ordinary assignees who are continuing an action brought by their assignors. As noted previously, and in no way undermined by the regulatory cases cited by Niemuller, *ordinary assignees have neither independent claims nor any greater rights than those belonging to their assignors.* Therefore, there is no reason to rely on the regulatory cases cited by Niemuller in interpreting the Exclusion clause at issue in this case.

*Id.* at *4 (emphasis added). Ultimately, the court held that the exclusion clause applied because DDCC and Sussex were ordinary assignees who were continuing an action brought by their assignors. *Id.* at *4.

In ***Great Am. Ins. Co. v. Primo***, Robert Primo ("Primo") wrote himself two checks totaling over $100,000 shortly before resigning from his position as a director and treasurer of Briar Green. 512 S.W.3d at 892. Briar Green maintained that Primo misappropriated funds and made a claim for the alleged loss with its fidelity insurer, Travelers Casualty & Surety Company ("Travelers"). *Id.* Travelers paid the claim in exchange for a written assignment of all Briar Green's rights and claims against Primo for the loss. *Id.* Subsequently, Travelers then sued Primo to recover the funds. *Id.* Primo, in turn, asserted a third-party claim against Briar Green and made a demand against Great American Insurance Company ("Great American") seeking reimbursement for the defense costs and attorney's fees he incurred in the Travelers suit. *Id.* Travelers then non-suited its claims against Primo who then non-suited its claims against Briar Green. *Id.* Primo then filed a contractual-indemnity action against Briar Green to recover the attorney's fees and expenses he incurred in the Traveler's suit. *Id.* Great American provided a defense to Briar Green as required by its policy. The suit ended in a judgment for Primo for about $100,000 in damages and fees. *Id.* While the indemnity suit proceeded, Primo sued Great American in another action, seeking

10

reimbursement for the defense costs and attorney's fees he incurred in the Traveler's suit. *Id.* Great American argued, in part, that it owed no duty to defend Primo because the action fell under the insurance policy's insured-versus-insured exclusion which limited Great American's liability for claims made "by, or for the benefit of, or at the behest of [Briar Green] or at the behest of [Briar Green] or . . . any person or entity which succeeds to the interest of [Briar Green]." *Id.* Ultimately, the Texas Supreme Court held that Briar Green's assignment to Traveler's of its claims against Primo "succeeded to the interest" of Briar Green and therefore, the insured-versus-insured exclusion barred coverage for the claims asserted by Primo. *Id.* at 895.

Neither *Niemuller* nor *Primo* implicate the same type of transfer of assets involved in this case. Here, the transfer of the Litigation Trust Assets, which is defined to include the D&O Claims, was accomplished by way of the Litigation Trust Agreement, which is incorporated by the Plan:

> As of the Effective Date, *pursuant to and in accordance with section 1141 of the Bankruptcy Code, the Plan and Confirmation Order, the Debtors, and Dr. Julio Palmaz, as applicable, hereby irrevocably transfer, assign and deliver to the Litigation Trust all of their respective right, title, and to the Litigation Trust Assets [(defined to include D&O Claims)]*, free and clear of any and all Liens, Claims, encumbrances or interests of any kind in such property of any other Person.

(ECF No. 356, Litigation Trust Agreement, ¶ 1.2(a)) (emphasis added). The Court recognizes that the language of the Litigation Trust Agreement uses assignment language. The Court, however, would be remiss to ignore the circumstances under which the Plan and incorporated documents were negotiated. *See Primo*, 512 S.W.3d at 894 ("A written contract must be construed to give effect to the parties' intent expressed in the text as understood in light of the facts and circumstances surrounding the contract's execution, subject to the parol evidence rule . . . . The [parol evidence] rule does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text. Those circumstances include, according to Professor Williston's treatise, 'the commercial or other setting in which the contract was negotiated and other

11

objectively determinable factors that give a context to the transaction between the parties.'"). The Litigation Trust Agreement was drafted and executed in the context of a chapter 11 bankruptcy for purposes of confirming the Plan. It is not unreasonable to interpret the "assignment" of the Litigation Trust Assets, not as a contractual assignment as those in *Niemuller* and *Primo*, but rather as a vesting of assets from one entity to another entity to otherwise accomplish the effect of § 1141(b),[6] which automatically vests all property of the estate in the debtor unless the plan or order confirming the plan provides otherwise. *See Primo*, 512 S.W.3d at 894 (interpreting the term "successor in interest" as used in a D&O policy according to "what the parties intended by the word 'succeeds'"). Moreover, the vesting of the Litigation Trust Assets to the Litigation Trust was accomplished so that the Litigation Trustee could pursue the Litigation Trust Assets:

> (e). Purpose of the Litigation Trust. The Litigation Trust shall be established for the sole purpose of liquidating and distributing its assets to the Litigation Trust Beneficiaries (who are holders of Classes 5 Equity Interests which are or may be Allowed) . . . . The Litigation Trust, through the Litigation Trustee, shall (i) collect and reduce the assets of the Litigation Trust to Cash, (ii) prosecute, settle and otherwise administer the Litigation Trust Assets, (ii[i]) make distributions to the beneficiaries of the Litigation Trust in accordance with the terms of this Plan and the Trust Agreement and (iv) take such other actions as may be reasonably necessary to accomplish the purposes of this section 6.6 of the Plan, as more specifically set forth in the Trust Agreement.

(*Id.*, Plan, ¶ 6.6(e)). To hold that vesting of Litigation Trust Assets in the Litigation Trust was a contractual assignment as those depicted in *Primo* and *Niemuller* ignores the context in which the Litigation Trust was executed, the functioning of § 1141(b), and the purpose of the Litigation Trust. As such, the Court does not agree that the assignment language contained in the Litigation Trust Agreement is sufficient for deeming this Litigation Trustee as an assignee for purposes of the Exclusion.

---

[6] Unless otherwise noted, all citations are to 11 U.S.C. § 101 *et seq*.

Next, Defendants argue that three U.S. Courts of Appeal have held that the insured-versus-insured exclusion applies in the bankruptcy context and bars the Litigation Trustee's claims against the debtor's former director and Officers. The Court will discuss each case in turn.

In ***Biltmore Assocs., LLC v. Twin City Fire Ins. Co.,*** Visitalk filed bankruptcy under chapter 11 after two years in business. 572 F.3d 663, 666 (9th Cir. 2009). As debtor in possession, Visitalk sued recently discharged officers and directors for breaches of their fiduciary duties. ***Id.*** The insurers refused coverage under the insured-versus-insured exclusion. ***Id.*** at 667. Subsequently, Visitalk filed a reorganization plan where it assigned its claims against the directors and officers to a trust established for the creditors ("Visitalk Creditor's Trust") and named Biltmore as trustee. ***Id.*** Biltmore and the directors and officers agreed to settle Visitalk's claims for approximately $175 million and the directors and officers assigned their rights against liability insurers to the Visitalk Creditor's Trust. ***Id.*** Biltmore sued the insurance companies to recover on the claims, and the district court dismissed the case.[7] ***Id.*** Relying on the insured-versus-insured exclusion, the court affirmed the district court's dismissal of the complaint because "a post-bankruptcy debtor in possession acts in the same capacity as a pre-bankruptcy debtor for purposes of directors and officers liability insurance." ***Id.*** at 668. The insured-versus-insured exclusion language in ***Biltmore*** is similar to the language in the present case: "The insurer shall not be liable to make any payment for Loss in connection with any Claim . . . brought or maintained *by or on behalf of* an Insured in any capacity." ***Id.*** (emphasis added). Thus, the issue before the court was "whether the underlying suit was 'brought or maintained on behalf of an Insured in any capacity.'" ***Id.***

---

[7] The District Court dismissed the case for reasons not related to the insured-versus-insured exclusion.

Despite the similarities in the language of the **Biltmore** policy and the language in the Admiral Policy, **Biltmore** is readily distinguishable. In **Biltmore**, Visitalk, as debtor in possession, sued its directors and officers directly and then later assigned its rights against the liability insurer to a creditors' trust for Biltmore, as trustee, settled the claims. Consequently, the arguments and analysis in **Biltmore** were framed in an attempt to distinguish (or equate) Visitalk as debtor in possession and Visitlk as an insured under the policy. Here, PSI never initiated a lawsuit against its directors and officers; rather, the Litigation Trustee initiated the lawsuits post-confirmation. Based on this distinction alone, the Court finds that **Biltmore** has no bearing on this case.

In a decision ultimately affirmed by the Eighth Circuit, a Missouri Bankruptcy Court held that a plan committee's lawsuit against a debtor's officers for breach of fiduciary duty and negligence in management was barred by a policy's insured-versus-insured exclusion. **Reliance Ins. Co. v. Weis,** 148 B.R. 575, 583 (E.D. Mo. 1992), *aff'd*, 5 F.3d 532 (8th Cir. 1993). In **Weis**, Bank Building and Equipment Corporation ("BBC") filed chapter 11 bankruptcy and over a year later obtained approval of a liquidation plan. **Id.** at 577. Pursuant to the liquidation plan, (1) the Plan Committee of BBC was formed to implement the liquidation plan; (2) all causes of action belonging to the bankruptcy estate (of BBC) vested in the Plan Committee of BBC and were to be brought in the name of such; and (3) Richard Miller ("Miller") was appointed as the Liquidation and Distribution Agent to act as the representative of the Plan Committee of BBC. **Id.** at 577–78. Subsequently, Miller brought suit against former BBC officers for breach of fiduciary duty and negligence in management of BBC. **Id.** at 578. Notice of the civil action was given to Reliance Insurance Company ("Reliance"), which had issued a director's and officer's liability policy to BBC. **Id.** Defendants requested coverage for themselves under the director and officer policy, and Reliance denied such coverage asserting that the claims were excluded under the policies insured-versus-insured exclusion. **Id.** The exception excluded Reliance's liability as to any loss "in

connection with any claim made against the Directors and officers . . . by or on behalf of a Director and/or Officer or by or on behalf of the Company, except for stockholder(s) derivative actions brought by a shareholder(s) of the company other than a Director and/or Officer." *Id.*

Reliance asserted that the Plan Committee of BBC was asserting claims on behalf of BBC, and therefore the cause of action fell within the insured-versus-insured exclusion. *Id.* The Plan Committee of BBC argued that the action is not brought on behalf of BBC, but rather brought by Miller, as agent for the Plan Committee, on behalf of the bankruptcy estate of BBC. *Id.* The court rejected this argument and ultimately concluded that the action initiated by the Plan Committee was on behalf of BBC against the directors and officers and therefore, barred under the policy's insured-versus-insured exclusion. *Id.* at 583. The court's decision was premised on two bases: (1) there is no legal distinction between the debtor and the bankruptcy estate because under § 541, "the estate succeeds to any right of action a debtor corporation may have to recover damages; and (2) under the terms of BBC's plan, Miller and the Plan Committee of BBC were obligated to "pursue BBC's right of action in order to recover assets for BBC's estate [for distribution to BBC's creditors]. *Id.* Here, the terms of the Plan differ from that of *Weis* in that the express purpose of this Litigation Trust is to distribute its assets to the Litigation Trust Beneficiaries (who are non-insider holders of Classes 5 Equity Interests), not to recover assets for Debtors' estate for distribution to its creditors. (ECF No. 356, Plan, ¶ 6.6(e)).

*Indian Harbor Ins. Co. v. Zucker et al.* is the most recent circuit court case dealing with the insured-versus-insured exclusion in the bankruptcy context. 860 F.3d 373 (6th Cir. 2017). *Indian Harbor* involved a corporation, Capitol Bancorp ("Capitol"), who filed chapter 11 bankruptcy. *Id.* at 374. Throughout the bankruptcy, Capital remained a debtor in possession. *Id.* Eventually, the United States Trustee appointed a creditors' committee to represent Capitol's unsecured creditors. *Id.* In 2013, Capitol decided to liquidate the company, and after negotiations

between the creditors and Capitol (as debtor in possession still under the direction of Capitol's officers), the parties agreed to a liquidation plan that required Capitol to assign all of the company's causes of action to a liquidating trust which would pursue those claims on behalf of the creditors *Id.* at 347–75. The plan stipulated that the officer's pre-petition liability would be limited to amounts recovered from Capitol's liability insurance policy ("Capitol's D&O Policy") held by Indian Harbor Insurance Company ("Indian Harbor"). *Id.* at 375. Capitol's D&O Policy covered any "Loss resulting from a first made claim against the Insured Persons . . . during the Policy Period . . . for a Wrongful Act." *Id.* Capitol's D&O Policy, however, excluded from coverage "any claim made against an Insured Person . . . by, on behalf of, or in the name or right of, the Company or any Insured Person[.]" *Id.* This exclusion did not apply to derivative suits by independent shareholders. *Id.* In August 2014, the litigation trustee, Zucker, sued Capitol's officers for $18.8 million alleging they breached their fiduciary duties to the Capitol. *Id.* Upon notifying Indian Harbor of the lawsuit, Indian Harbor filed an action seeking a declaratory judgment that Indian Harbor had no obligation to cover any damages from the lawsuit because the Trust's claims fell within the insured-versus-insured exclusion. *Id.*

The issue before the Sixth Circuit was narrowly framed as whether "the Company" (a defined term in the insurance policy) included Capitol as debtor in possession. *Id.* at 378. Ultimately, the Sixth Circuit held that Capitol in its pre-bankruptcy form was the same entity as Capitol as debtor in possession and therefore, the insured-versus-insured exclusion barred Zucker from recovering under the Capitol D&O Policy. *Id.*

The majority opinion first analyzed the terms of the Capitol D&O Policy focusing on the exclusion language which bars claims "by, on behalf of, or in the name or right of, the Company or any Insured Person" against an Insured Person. *Id.* at 375. The court reasoned that because Capitol assigned its rights to its causes of action to the litigation trust, the litigation trust was a

voluntary assignee and therefore stood in Capitol's shoes and possessed the same rights subject to the same defenses. *Id.* In response, Zucker argued that when Capitol filed bankruptcy, it became a debtor in possession administering the estate for the benefit of creditors thereby rendering it a legally distinct entity. *Id.* at 376. The court disagreed.

The court analyzed the definitions of "debtor in possession" and "debtor" and concluded that because "debtor in possession" is defined as "the debtor" and "debtor" is defined as "the person or municipality concerning which a case under this title has been commenced," "'the debtor in possession is the debtor, and the debtor is the person . . . that filed for bankruptcy.'" (first citing ***Biltmore,*** 572 F.3d at 671; and then citing 11 U.S.C. §§ 1101(1), 101(13) (2012)). The Sixth Circuit also cited to ***NLRB v. Bildisco & Bildisco***, 465 U.S. 513, 528 (1984), a United States Supreme Court case involving the rejection of a collective-bargaining agreement, asserting that under ***Bildisco & Bildisco***, the Supreme Court also rejected this separate and distinct argument. *Id*.

The Sixth Circuit also recognized that upon the filing of a bankruptcy petition, a new legal entity—the bankruptcy estate—is created, and that upon the creation of the bankruptcy estate, Capitol's pre-petition causes of action became property of the estate. *Id.* at 378. The court, however, dismissed this as irrelevant and found instead that because the estate cannot act on its own and requires a debtor in possession or trustee to act on its behalf, the claims were still brought by Capitol (the Company), on behalf of the estate. *Id.*

The dissent maintained that the "trustee in this case should have the same right to be exempt from the insured-versus-insured exclusion as a court appointed trustee[,]" noting that "[f]unctionally . . . there is no distinction between an assigned trustee that a bankruptcy court has determined is independent and does not pose a risk of collusion, and one that is appointed by a

bankruptcy court and is by nature of that appointment independent." *Id.* at 379 (Bernice, J., dissenting). The dissent also acknowledged the implications of the majority's holding:

> If the majority's decision becomes settled precedent, this Court will send a clear message to creditors in chapter 11 proceedings that if claims against directors and officers are deemed to be of significant value and the plan proposes to put those claims into a trust, the creditors must not agree to a plan proposed or even agreed to by the debtor in possession. Instead creditors will be required to seek the appointment of a bankruptcy trustee, where appropriate, or they will have to defeat the debtor in possession's plan and propose their own disclosure statement and plan. The cost in terms of professional fees and judicial resources cannot be overstated, especially in light of the fact that there would be no practical difference to the insurance companies as they would still be required to defend the directors' and officers' claims.

*Id.* at 382.

The Court is not persuaded by the majority's opinion in *Indian Harbor* for a number of reasons. First, as previously noted, the issue the *Indian Harbor* court sought to answer was whether "the Company" under the terms of the policy included Capitol as debtor in possession. *Id.* This issue is not before this Court; rather, the issue before this Court is whether the Litigation Trustee is an Insured. There is no question that, under the express terms of the Admiral Policy, the Insured includes a debtor in possession.

Second, the Sixth Circuit asserts that because a debtor in possession, while subject to a specific list of functions and duties under § 1107, is not required to investigate its financial condition and improper conduct, it does not function as the equivalent of a chapter 11 trustee. *Id.* at 377. Based on this premise, the *Indian Harbor* court dismissed the case law which holds that a court-appointed trustee was not barred by the insured-versus-insured exclusion:

> Chapter 11 gives the debtor in possession all the statutory powers and duties of a trustee. But there is one revealing exception: the debtor in possession need not investigate the debtor's financial condition or any improper conduct because "the debtor cannot be expected to inform on itself." Zucker and the Reids do not come to grips with this distinction. Every case they invoke in support of their position involves a court-appointed trustee rather than an assignee from a Chapter 11 debtor

in possession. If Capitol had successful emerged from Chapter 11 bankruptcy, as Zucker's counsel (correctly) acknowledged at oral argument, it would once again be the same "Company" covered by the Contract. How strange then to treat the debtor in possession as an entirely distinct entity for purposes of this insurance contract.

\* \* \*

It makes no difference that the bankruptcy court approved the plan transferring the bankruptcy estate's causes of action from Capitol to the Liquidation Trust. Zucker and the Reids may be right that court approval offers a safeguard against the collusive suits that insured-versus-insured exclusions seek to prevent. *But that does not eliminate the practical and legal difference between an assignee and a court-appointed trustee that receives the right to sue on the estate's behalf by statute.*

*Id.* (emphasis added) (first citing 11 U.S.C. § 1107(a); and then citing William L. Norton, Jr., 5 Norton Bankruptcy Law and Practice § 93:23 (3d ed. 2008)). Here, this Litigation Trustee is not subject to such limitation as the Litigation Trust Agreement tasks this Litigation Trustee with all of the duties of a statutorily-appointed chapter 11 trustee and is under an obligation to investigate improper conduct by the debtor:

Authority of the Trustee: Subject only to any limitations contained herein the Trustee . . . is expressly authorized to:

(b) exercise and perform the rights, powers, and duties held by each Debtor's estate with respect to the Litigation Trust Assets, including without limitation the authority under 1123(b)(3) of the Bankruptcy Code, and *shall be deemed to be acting in the capacity of a trustee under sections 704 and 1106 of the Bankruptcy Code, including commencing, prosecuting or settling causes of action, enforcing contracts or asserting claims, defenses, offsets and privileges*[.]

(ECF No. 356, Litigation Trust Agreement, ¶ 3.8(b)) (emphasis added). Stated differently, this Litigation Trustee represents "an independent and disinterested entity, separate and distinct from the debtor as well as the pre-petition company, and as such does not strictly 'stand in the shoes' of the debtor." *See e.g.* **Cohen et al. v Nat'l Union Fire Ins. Co. et al (In re County Seat Stores, Inc.)**, 280 B.R. 319, 326 (Bankr. S.D.N.Y. 2002) (holding that a chapter 11 trustee, as a statutory

19

entity and "truly adverse party does not (or should not) invoke fears of collusion" associated with insured-versus-insured exclusions).

Next, the **Biltmore** court, **Indian Harbor** court, and Defendants argue that Supreme Court precedent under **Bildisco & Bildisco** also holds that a debtor and debtor in possession are not separate and distinct entities. **Bildisco & Bildisco** stated:

> Obviously if the [debtor in possession] were a wholly "new entity," it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place. *For our purposes, it is sensible to view the debtor in possession as the same "entity" which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have done absent the bankruptcy filing.*

**Bildisco & Bildisco**, 465 U.S. at 528 (emphasis added). This Court does not interpret **Bildisco & Bildisco**'s application as broadly as others suggest its application is. The express language of the opinion limits this separate-entity principle to the treatment of executory contracts under § 365. As such, the Court does not agree that a finding that the debtor and debtor in possession are separate and distinct entities for purposes of the insured-versus-insured exclusion is adverse to Supreme Court precedent.

During oral arguments counsel appearing on behalf of John Foster maintained that the **Indian Harbor** holding cannot be reconciled with the Fifth Circuit's treatment of separate entities in **Dynasty Oil & Gas, LLC v. Citizens Bank et al. (In re United Operating, LLC),** 540 F.3d 351, 355 (5th Cir. 2008). (ECF No. 170, Transcript, 59:10–14). The Court agrees. In **United Operating**, the Fifth Circuit recognized that without a specific and unequivocal reservation contained in a chapter 11 plan to pursue a claim post-confirmation, a post-confirmation chapter 11 debtor has no standing to pursue that claim. 540 F.3d at 355. Describing the creation, treatment, and termination of various entities under the Code, the **United Operating** court held that the ability to pursue a pre-petition cause of action post-confirmation is an issue of standing:

During its Chapter 11 case, Dynasty, as a debtor in possession, had most of the powers of a bankruptcy trustee to pursue claims on behalf of the estate. 11 U.S.C. § 1107(a). Upon confirmation of the plan, the estate ceased to exist, and Dynasty lost its status as a debtor "in possession." 11 U.S.C. § 1101(1); *In re Grinstead,* 75 B.R. 2, 3 (Bankr.D.Minn.1985). At that time, Dynasty's authority to pursue claims as though it were a trustee also expired. *In re Ice Cream Liquidation, Inc.,* 319 B.R. 324, 333 (Bankr.D.Conn.2005) (debtor in possession status, along with the relevant powers of a trustee, "ceases on the effective date of a confirmed plan"). Nonetheless, in some cases the Code allows a reorganized debtor to bring a post-confirmation action on a "claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3). A debtor may preserve its standing to bring such a claim (*e.g.,* for fraud or breach of fiduciary duty, or to avoid a preferential transfer) but only if the plan of reorganization expressly provides for the claim's "retention and enforcement by the debtor." § 1123(b)(3)(B). "After confirmation of a plan, the ability of the [debtor] to enforce a claim once held by the estate is limited to that which has been retained in the plan." *In re Paramount Plastics, Inc.,* 172 B.R. 331, 333 (Bankr.W.D.Wash.1994); *see also In re Tex. Gen. Petrol. Corp.,* 52 F.3d 1330, 1335 n. 4 (5th Cir.1995) (citing *Harstad,* 39 F.3d at 902–03).

\* \* \*

If Dynasty had wanted to bring a post-confirmation action for maladministration of the estate's property during the bankruptcy, it was required to state as much clearly in the Plan. Had that been the case, the creditors could have reviewed the possible impact of future litigation on their claims and liabilities before voting to confirm the Plan. As it happened, Dynasty did not preserve those claims. The Plan has been confirmed and substantially consummated; the estate no longer exists. Dynasty is without standing to assert these claims.

*Id.* at 355–56. This Court cannot reconcile **United Operating** with the Sixth Circuit's holding in **Indian Harbor**. By stripping a post-confirmation entity of standing to pursue a pre-petition cause of action, the **United Operating** opinion recognizes that the debtor, debtor in possession, and the post-confirmation entity are all separate entities. Stated differently, if the debtor, debtor in possession, and the post-confirmation entity were all the same entities, the post-confirmation entity in **United Operating** would not have lost standing to assert its pre-petition claims.

Finally, Defendants' assert that the phrases "in the right of" and "on behalf of" includes assignees. Defendants contend that cases have specifically held that claims by a litigation trustee "assignee," such as this Litigation Trustee, are barred by the insured-versus-insured exclusion. *See*

***Terry v. Fed. Ins. Co.*** (***In re Reynolds-Patrick Cty. Mem'l Hosp., Inc.***), 315 B.R. 674, 687 (Bankr. W.D. Va. 2003).[8]

In ***Terry***, RJ Reynolds–Patrick County Memorial Hospital, Inc. ("RJ Reynolds") filed a chapter 11 petition on November 17, 1999. ***Id.*** at 676. On March 9, 2001, a bankruptcy court confirmed RJ Reynolds's plan of reorganization which created a trust and appointed Roy Terry ("Terry") as the trustee. ***Id.*** The plan also provided that RJ Reynolds would transfer all claims against directors and officers to the trust. ***Id.*** In November 2001, Terry commenced an adversary proceeding against the directors and officers for various actions taken by them in their capacities as officers of RJ Reynolds. ***Id.*** Shortly thereafter, Terry notified Federal Insurance Company ("FIC") regarding its claims against the directors and officers, and FIC denied coverage on the grounds that the claims were barred under the policy's exclusion provision. ***Id.*** Ultimately, the court held that the claims were barred by the policy's exclusion provision because the trust obtained standing to assert the claims by way of a voluntary assignment or, in the alternative as a representative of the unsecured creditors, through the plan. ***Id.*** at 679.

The court concluded that the assignment of claims contained in the plan (1) designated trust as a mere assignee and (2) conferred standing on Terry to bring the claims ***Id.*** at 679–80 ("The critical distinction is that the Trustee in this case obtained standing by virtue of the Debtor's voluntary assignment, through the Plan, of claims against directors and officers . . . . The Trustee in this case *is* a mere assignee. His rights arise by virtue of provisions in the plan, not directly by operation of statute.") Moreover, the court reasoned that because Terry had standing as either as a function of the assignment of claims in the plan or as a representative of the unsecured creditors, the policy excluded such actions. ***Id.*** at 682. In the Fifth Circuit, standing to bring a post-

---

[8] Defendants also cite to ***Biltmore*** and ***Indian Harbor***. Because the Court has already discussed these cases at length, the Court does not see the need to further address these cases.

confirmation claim is not conferred by way of transfer of claims in a plan, but rather through a specific and unequivocal reservation of the claim. ***In re United Operating, LLC***, 540 F.3d at 355. Stated differently, where a claim is vested in the debtor or a third party pursuant § 1141, a debtor's plan must expressly provide for a claim's retention and enforcement, otherwise standing to pursue the claim post-confirmation is lost. ***Id.*** Because the ***Terry*** decision is inconsistent with Fifth Circuit's precedent, the Court does not find this case instructive for barring the Litigation Trustee's claims under the Exclusion.

### b. Shareholder Direct Claims

As previously noted, the Litigation Trustee is also pursuing direct claims assigned to him by former PSI shareholders for misrepresentations and omissions made to the shareholders when soliciting private investments for PSI. The Admiral Policy provides an exception to the Exclusion for shareholders bringing direct or derivative claims (the "Shareholder Exception"):

> [T]he Insurer shall not be liable to make any payment for **Loss** in connection with a claim made against any **Insured**:
>> F. by, on behalf of, or in the right of any **Insured** in any capacity, or any security holder of the **Insured Entity**, provided, however, this exclusion does not apply to:
>>> 1. any Claim by any security holder of the **Insured Entity**, whether directly or derivatively, but only if such claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or participation of, or intervention of any **Insured**.

Defendants also assert that the Direct Claims are barred by the Exclusion. First, Defendants argue that the Direct Claims are "on behalf of, or in the right of . . . any security holder" because the Litigation Trustee is acting as an assignee of individual investors' claims. As such, under ***Primo***, the Litigation Trustee's direct claims are barred by the Exclusion. Defendants, therefore, urge the Court to ignore the Shareholder Exception which specifically addresses direct and derivative claims by shareholders. In Texas, when interpreting an insurance policy, courts should "give effect to all provisions so that none will be meaningless." ***Gilbert Tex. Const., L.P., v.***

*Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). Because the Litigation Trustee is asserting direct claims that belong to shareholders, and such claims are specifically addressed within the Shareholder Exception, the Court does not agree that *only* the Exclusion language can be considered. Stated differently, the Court must evaluate whether the Direct Claims are excepted from the Exclusion under the Shareholder Exception otherwise the Shareholder Exception would be rendered meaningless.

Next, Defendants argue that the Litigation Trustee cannot meet the burden of proving the Shareholder Exception applies because the Exception applies only to "any Claim by any security holder" and because the Litigation Trustee is not a Shareholder, he does not qualify under the Shareholder Exception. Stated differently, the phrase "by any security holder" does not apply to assignees, such as the Litigation Trustee. The Trustee argues that Defendants are asking the Court to insert an additional word into the Shareholder Exception so that it is read as "any claim [brought] by any security holder."

Defendants cite to a number of cases where courts "have readily distinguished between exclusion limited to claim 'by' an entity . . . as being expressly limited to claims 'by' the entity. *See Fidelity & Deposit Co. of Maryland v. Zandstra*, 756 F. Supp. 429, 433 (N.D. Cal. 1990) (Insured v. Insured Exclusion "by the Bank" is limited to claims "by" the Bank, "[t]he exclusion at issue here does not state that it applies to actions brought 'by or in the right of Homestate,' . . . or include similar language which would indicate an intent to include Homestate's successors" (citation omitted)); *Branning v. CNA Ins. Co.*, 721 F. Supp. 1180, 1184 n.4 (W.D. Wash. 1989) ("[T]his court finds... Evanston distinguishable: the court in Evanston scrutinized carefully the phase 'by or in the right of South Coast [Bank]'. That phrase does not appear in endorsement 6 [the Insured v. Insured Exclusion]"); *Finci v. Am. Casualty Co.*, 572 A.2d 1092, 1096 (Md. App. 1990) ("One difficulty with the foregoing analysis [by the D&O insurer] is that the insured v.

insured provision excludes claims made 'by' the Institution and not 'of it.'"). These cases, however, refer to the language contained in insured-versus-insured exclusion, not exceptions to the insured-versus-insured exclusion.

Next, the Exclusion itself excludes claims brought by certain individuals or entities. The exceptions, however, generally speak to the types of claims excepted from the Exclusion. At least two exceptions, however, except specific types of claims *brought by* specific individuals or entities. For example, section IV.F.4. excepts from the Exclusion "any claim *brought* by any former Insured Person, who has not served as such for at least 3 years prior to such claim being first made against any Insured." (emphasis added) Similarly, section IV.F.4. excepts from the Exclusion "any claim . . . *brought or maintained* by the Supervisory Board of the Insured Entity[.]" (emphasis added).  Accordingly, the Court does not agree that the Shareholder Exception does not encompass the Direct Claims asserted by the Litigation Trustee.[9]

Finally, Defendants argue that even if the Trustee's Lawsuit is deemed "by" the security holder, the Litigation Trustee still cannot meet the burden of proving the Shareholder Exception applies because he is an "Insured" under the Admiral Policy and the Shareholder Exception requires that the shareholder's claim be "instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or participation of or intervention of, any Insured." Defendants further maintain that because of the Debtors' involvement in the plan, the limitation of liability for Sprague and Palmaz contained in the Plan, and various express provisions in the Plan, the Trustee cannot carry this burden. The Court disagrees. The Direct Claims are for misrepresentations and omissions made to the shareholders when soliciting private investments

---

[9] In their Reply Memorandum In Further Support of Motion to Dismiss Trustee's Complaint, the Excess Insurers argue that the Shareholder Exception only applies to "Claims" and because the Claim here was made by the Trustee and not the Shareholders, the Shareholder Exception cannot apply. This argument still does not address the aforementioned pattern of language contained in the enumerated exceptions to the Exclusion.

for PSI. These claims are wholly independent of the Debtors' bankruptcy, the Plan confirmation process, and the releases for Palmaz and Sprague (which are limited only to D&O Claims, not Direct Claims) contained in the Plan. Moreover, Defendants have not cited to any case law which would have the Court rule otherwise.

## CONCLUSION

For the aforementioned reasons, the Court concludes that Defendant Admiral's Motion to Dismiss and Memorandum of Law in Support should be denied.

IT IS THEREFORE ORDERED Defendant Admiral's Motion to Dismiss and Memorandum of Law in Support (ECF No. 3) is DENIED.

###